## SOUND RECORDING LICENSE AGREEMENT

AGREEMENT dated as of <u>OCTOBER 8, 1998</u> and between <u>TRIAGE RECORDS 501 10th Street Santa Monica, Ca 90402</u> ("Owner"), and BRIAN PERERA d/b/a CLEOPATRA RECORDS, 13428 Maxella Ave. Ste. 251, Marina Del Rey, CA 90292 ("Licensee).

WITNESSETH

WHEREAS, Owner has the exclusive worldwide rights to a certain number of masters sound recordings by <u>SEE SCHEDULE "A"</u> for one full ALBUM (hereinafter referred to as "Artist"). See Schedule A for track listing.

WHEREAS, Licensee is in a position to provide promotion,, distribution and sale of phonorecords throughout the <u>NORTH AMERICA</u> (the "Territory").

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, it is agreed as follows:

1. LICENSE OF SOUND RECORDINGS.
   (a) Owner licenses to Licensee, and Licensee accepts from Owner, for the terms of this Agreement (the "Term") and for the Territory, the soundrecordings listed on the schedule listed on "Schedule A" attached hereto (the "ALBUMS") only for the purpose of manufacturing, marketing, distributing, and selling the ALBUMS [singles rights deleted] in the Territory. Except as otherwise expressly provided for in this Agreement, all rights of any nature whatsoever in the ALBUMS and all of their derivative are reserved by Owner.

   (b) Licensee shall use its best efforts, skill and ability in its manufacture, promotion, marketing, distribution and sale of phonograph records embodying the Masters and in the performance of each and all of its other obligations hereunder.

2. RIGHTS GRANTED. Owner grants to Licensee the following rights during the Term:
   (a) The exclusive right to manufacture, distribute, sell, publicly perform, and broadcast, in the Territory, phonorecord embodying the Masters;

   (b) The right to use and publish in the Territory the PRE-APPROVED name, likeness and biography of each artist whose performances are embodied in the Masters in connection with the advertising, publicizing, or sale of records manufactured therefrom, and Licensee shall utilize any such name, likeness and biography in identical form to that provided by Owner to Licensee.

3. TERM. The Term for the ALBUMS entitled <u>SEE SCHEDULE "A"</u> shall commence on <u>FROM JANUARY 1, 1999 and shall continue for SEVEN YEARS thereafter, until DECEMBER 31, 2006.</u>

   (c) Licensee shall not, without Owner's prior written consent, which shall not be unreasonably withheld, release, authorize, or permit the release of records embodying Masters or otherwise exploit the Masters on a so-called "budget" or "mid-price" label, or commercial tie-up arrangements, or through any direct mail or mail order method of distribution, including, without limitation, record club distribution, or other similar merchandising methods, or through any other method of distribution now or hereafter devised other than through normal commercial channels for ultimate retail sale to consumers. For purposes of this Agreement, a "Budget" or "mid-price" label shall mean a label on which records bear a suggested retail price ("SRLP") which is less than Eighty Percent (80%) of the SRLP for top-line records. Licensee may use up to Two (2) masters hereunder on any compilation of Licensee whether budget or

CLEOPATRA LABEL GROUP PROMOTIONS OFFICE
13428 MAXELLA AVE #251 · MARINA DEL REY · CA · 90292
v 310.823.0337 · f 310.823.5497 · e cleopatra@tunanet..com

## EXHIBIT A

~~otherwise.~~ Provided that the consent of the Owner is given as specified above, Licensee shall have the right to sell and distribute phonorecords manufactured hereunder through its own full-price mail order division.

4. ROYALTIES. Licensee shall pay to Owner the following sums:

(a) A base Royalty of a percentage of the wholesale price (in the country in which the particular phonorecords embodying the Masters ("Base Rate") sold in the Territory. As use herein, "Net Sales" shall mean all records manufactured and distributed hereunder, less returns and the deductions provided for in this Paragraph 4. The following royalty percentages shall apply as to the Recordings:

(i) As to ALBUMS, a royalty of $1.50 per record sold, cross-colateralized among the three ALBUMS contained within this agreement SEE SCHEDULE "A"

(b) Notwithstanding any of the foregoing:

(i) for purposes of computing royalties, any excise, sale or comparable or similar taxes shall be excluded form the suggested retail price or other applicable price, if any;

(ii) for the purposes of computing roayalties, there shall be excluded from the suggested retail price, for packaging charges, an amount equal to Ten Percent (10%) for jackets for twelve inch (12") disc phonograph records and for all singles; Tewnty Percent (20%) for cassette containers, Twenty Percent (20%) for compact disc boxes and/or containers;

(iii) royalties shall be computed and paid upon ONE HUNDRED Percent (100%) of sales less all returns, refunds, credits, discounts, and, after a reasonable reserve no to exceed thirty percent (30%) against anticipated returns of such sales is established. Reserves shall be liquidated within Two (2) accounting periods hereunder.

(c) in the event (subject to the restrictions as to such coupling provided for in this Agreement) any or all of the Masters hereunder are coupled on Records with other masters, the royalty hereunder shall be based upon that portion of the suggested retail price, which the number of Masters hereunder which are embodied on such Records, bears to the aggregate number of all masters embodied on such Records; and

(i) Notwithstanding any statements to the contrary, no coupling is permited without permission of the OWNER

(d) intentionally deleted

5. PAYMENT OF ROYALTIES. Licensee shall submit to Owner, within Sixty (60) days following the last day of June and December of each year, a statement setting forth in detail the computation of royalties earned during the preceding calendar semester, and including, without limitation of the generality of the foregoing, the number of copies of each record sold during the accounting period and the royalty per record. Each statement shall be accompanied by payment of the royalties due and payable, less advances paid, in accordance width this Agreement.

6. ARTIST'S ROYALTIES. Owner shall pay all royalties which may become due to Artists and producers with respect to records sold hereunder.

7. FORMAT OF PHONORECORDS. Phonorecords manufactured and distributed hereunder by Licensee shall be released in the same format (i.e., packaging, artwork, order-of-masters, etc.) as those phonorecords were first released in the Territory. country-of-origin. notwithstanding the foregoing, if in Licensee's reasonable business judgment, changes to said phonorecord formats are necessary for the release of the master sound recordings in certain countries, Licensee shall have the right to alter said formats with the artistic approval of Owner, but said approval shall not be unreasonably withheld.

8. Intentionally Deleted

# EXHIBIT A
# 5

9. ADVANCE. As a recoupable advance for all record royalties (as described in Paragraph 4, above) payable to Owner for the exploitation of the master sound recordings set forth in "Schedule A" attached hereto, Licensee shall pay owner the sum of SEE SCHEDULE "A"

    (a) Intentionally Deleted

10. PROMOTIONAL GIVEAWAYS AND FREE GOODS. Licensee shall not distribute or authorize or permit the distribution of records hereunder as or for so-called "promotional giveaways" or at prices less than the normal wholesale and suggested retail list prices in the Territory; provided, however, that a reasonable amount of records consistent with the practices which shall exist from time to time in the record distribution industry in the Territory may be provided for advertising or promotional purposes. Notwithstanding the foregoing, in any accounting period hereunder, Licensee shall not distribute at no charge to the recipient there of more than the number of ALBUMS equal to (15%) of all ALBUMS sold during that accounting period. The foregoing shall apply in respect of ALBUMS intended for resale by the recipients thereof as well as any so-called promotional giveaways or ALBUMS priced at less than the normal wholesale and suggested retail list price in the Territory.

11. BOOKS AND RECORDS. Licensee shall keep true and correct accounts of sales of records embodying the Masters. Owner shall have the right form time to time to inspect and make extracts of the books and records of Licensee, its subsidiaries or affiliates, wherever same may be, in so far as said books or records pertain to the exercise by Licensee of any rights granted to Licensee hereunder. Such inspection shall be made upon written notice, by such independent duly qualified accountants or auditors as chosen by Owner, during normal business hours of normal business days at reasonable intervals and shall not be made more than once per each twelve (12) month period.

12. OWNERSHIP OF LICENSED PROPERTY. All masters, tapes, acetates, stampers, mothers or duplicates thereof of the Masters, all other material supplied by the Owner to Licensee hereunder, and all copyrights, ownerships and rights in and to such masters and other material are and shall remain the sole and exclusive property of Owner subject, however, to the rights of Licensee under this Agreement. Licensee shall not in any manner encumber or permit the encumbrance of any of the foregoing.

13. DELIVERY OF MASTERS. Owner shall deliver the master tapes comprising the sound recordings to Licensee promptly after the execution of this Agreement. Licensee shall then be responsible for the preparation of the master tapes for compact disc production, as well as any modifications to the artwork which may become necessary for the production of compact discs and cassettes.

14. EFFECT OF EXPIRATION OR TERMINATION.
    (a) Upon the expiration or termination of the Term, all pressing by Licensee shall cease, and no further records shall be manufactured form the Masters.

    (b) All sales of records by Licensee subsequent to the expiration of the Term shall except as otherwise provided herein, be in accordance with the terms and provisions hereof applicable to the sale of records during the Term. Without limiting the generality of the forgoing, such sale shall be in Licensee's normal course of business and at prices not less than normal wholesale and retail prices of such records during the Term and such prices shall not be discounted by the way of rebate, delayed billing or any other practice which effects a discount in such prices or records hereunder. Upon the expiration of a Six (6) month period after the Term, Licensee shall destroy all the remaining records under the supervision of Owner or Owner's designee or, Owner may purchase them from Licensee at actual cost.

15. OWNER'S WARRANTIES. Owner represents and warrants that it possesses full right, power and authority to enter into and perform this Agreement, and that it will not, so long as this Agreement remains in effect, grant to any other person, firm or corporation any rights which it has granted to Licensee hereunder.

16. INDEMNITY. The parties hereto agree to defend, indemnify and hold each other harmless against any and all liability, loss damage, cost or expense, including reasonable attorneys' fees, paid or incurred by reason of any breach of any covenants, warranties or representations hereunder made to the other. The indemnitor shall receive prompt written notice of any claim or action to which this indemnity

# EXHIBIT A
# 6

applies and shall be given the reasonable opportunity to defend against said claim or action, at its expense. The indemnity shall not settle any such claim or action without the prior written consent of the indemnitor, which consent shall not be unreasonably withheld.

17. PROCEEDINGS AGAINST THIRD PARTIES. Licensee shall have the right, with Owner's prior written consent, to bring legal actions against third parties in the Territory with regard to infringements (and other related causes of action) of the copyrights in and to the sound recordings licensed hereunder. Licensee may initiate such proceedings at its sole cost and expense, and Licensee shall have the right to deduct its costs from any proceeds from such proceedings, with the balance of their proceeds being divided equally between Licensee and Owner.

18. DEFINITION OF RECORD. For the purpose of this Agreement, the term "record" or "phonograph record" or "phonorecord" shall mean cassettes and compact discs.

19. NOTICES. All notices hereunder given by the parties shall be in writing and may be given by certified mail. The addresses of the parties shall be the addresses printed at the beginning of this Agreement, until further notice to the contrary. A copy of any notice which is sent to Licensee shall be sent by regular mail to Cleopatra Records, 13428 Maxella Ave. #251, Marina Del Rey, CA 90292

20. ASSIGNABILITY. Licensee shall have the right to assign this Agreement or any of its rights hereunder or delegate any of its obligations hereunder to a subsidiary or affiliated company or in connection with any merger, reorganization, sale or consolidation to which License is a party. In the event of a breach of the agreement by the Licensee which is not redressed within 90 days upon written notice being given by the Licensor, or the Licensee goes into Liquidation, all rights revert to the Licensor.

21. MISCELLANEOUS.
   (a) This Agreement has been entered into in the State of California, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of California applicable to contracts entered into and performed entirely within the State of California, with respect to the determination of any claim dispute or disagreement which may arise out of the interpretation, performance, or breach of this Agreement.

   (b) This Agreement may not be modified orally; no waiver, amendment, or modification shall be binding or effective unless in writing and signed by the party sought to be bound.

   (c) It is understood and agreed that in the performance of this Agreement Licensee is acting as an independent contractor and shall not be, act or represent itself as the employee, agent or representative of Owner and shall not have the right, power or authority to bind Owner or make any contract or other agreement or assume or create any obligations or liability, express or implied, on behalf of Owner. Neither the making of this Agreement nor the performance of any of the provisions hereof shall be construed to constitute Licensee the agent or legal representative of Owner for any purposes, nor shall this Agreement deemed to establish a joint venture or partnership between the parties herein.

   (d) Paragraph headings used herein are for conveniences only and are not part of this Agreement and shall not be used in construing it.

   (e) This Agreement shall insure to the benefit of and be binding upon Owner and its successors and assigns and Licensee and any permitted successors or assigns

22. MECHANICAL LICENSE & SYNCHRONISATION LICENSE
   Licensee shall pay the copyright propietors all mechanical and synchronization royalties due, and shall hold Licensor free and harmless from all adjudicated claims with respect thereto provided that the Licensor warrants and agrees that the Licensee will be granted a mechanical license throughout the Territory in respect of the compositions embodidied in the Masters at the standard or statury rate for each country of the territory.

# EXHIBIT A

23. PROMOTIONAL COPIES TO ARTISTS/OWNER
TRIAGE will recieve 100 free promotional CDs of each "ALBUM" to be distributed to the participating artists.

IN WITNESS HEREOF, the parties have caused this Sound Recording License Agreement to be executed as of the day and year first written.

("Licensee")                                                    ("Owner")

_____                      _____
Brian Perera                                                 Authorizing Signiture
Cleopatra Records                                      TRIAGE RECORDS

5

**EXHIBIT A**
8

SCHEDULE A

**ALBUMS 1**
Various Artists / Tribute to ALICE COOPER
ADVANCE: $100,000
PAYABLE: Twenty Five Percent (25%) upon signiture of agreement, Seventy Five Perecent (75%) upon delivery of production master & artwork

**ALBUMS 2**
Various Artists / Tribute to OZZY OSBORNE
ADVANCE: $100,000
PAYABLE: Twenty Five Percent (25%) upon signiture of agreement, Twenty Five Percent (25%) upon commencement of recording and Fifty Perecent (50%) upon delivery of production master & artwork

**ALBUMS 3**
Various Artists / Tribute to AEROSMITH
ADVANCE: $100,000
PAYABLE: Twenty Five Percent (25%) upon signiture of agreement, Twenty Five Percent (25%) upon commencement of recording and Fifty Perecent (50%) upon delivery of production master & artwork

**EXHIBIT A**
9